IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 19, 2009

## STATE OF TENNESSEE v. GEORGE TIMMONS

**Appeal from the Criminal Court for Hamilton County**
**No. 250266    Rebecca Stern, Judge**

---

**No. E2008-01628-CCA-R3-CD - Filed December 14, 2009**

---

The Defendant, George Timmons, was convicted by a Hamilton County jury of two counts of rape, one count of aggravated sexual battery, one count of assault, and one count of aggravated domestic assault. The Defendant received an effective sentence of life without parole as a multiple rapist. In this appeal as of right, he argues that the evidence is insufficient to support his convictions and that the trial court erred in sentencing him to life without parole as a multiple rapist and in enhancing his other sentences beyond the presumptive minimum. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P.  3 Appeal as of Right;  Judgments of the Criminal Court are Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which J. CURWOOD WITT, JR., and NORMA MCGEE OGLE, JJ., joined.

John G. McDougal, Chattanooga, Tennessee, attorney for appellant, George Timmons.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; William H. Cox, III, District Attorney General; Boyd Patterson and Leslie Longshore, Assistant District Attorneys General, attorneys for appellee, State of Tennessee.

## OPINION

The Defendant and the victim, L.D.,[1] were both homeless, living in a wooded area of Chattanooga in a lean-to tent. The record reflects that the two had been in an ongoing relationship for about a month leading up to the events of July 3, 2004. Patricia Matthews, a 911 operator with the Chattanooga Police Department, testified that she recorded an exchange between the victim and an officer to whom the victim reported that the Defendant had beaten and raped her sometime on the night of July 3 or early morning of July 4, 2004.

---

[1] It is the policy of this court to refer to victims of sexual offenses by their initials.

L.D. testified that in July 2004 she was homeless and living with her boyfriend, the Defendant, in the woods near the Community Kitchen shelter in Chattanooga. She recalled that the Defendant initially treated her well but became abusive to her because "he was jealous and possessive and he thought [she] was messing around on him." She stated that she went to the Community Kitchen on the morning of July 3 to report that the Defendant had been "slapping [her] around." However, the police refused to investigate her claims because she had no bruises. She testified that she went back to their camp that evening to collect her things to leave and go to the shelter. She stated,

> [The Defendant] must have followed me there or something because he showed up and he grabbed a big branch from a tree and started beating me with it. And he started beating me with his fists and he was chocking [sic] me. And then he ordered me take my clothes off and he proceeded to rape me.

The victim recounted that the Defendant "jammed his whole fist up [her] vagina," ordered her to perform oral sex on him, raped her vaginally with his penis, and ordered her to perform oral sex on him again before passing out. The victim said that the Defendant had a knife "on him."

After the Defendant passed out, the victim ran to Market Street where she saw a security guard who called the police and an ambulance for her. The victim spent four days hospitalized while she recuperated from three cracked ribs, a broken nose, retinal damage and a neck injury. The victim identified photographs showing the pathway to the tent, the tent, and the mattress where the Defendant beat and raped her. She testified that the blood on the mattress was from the beating she suffered.

On cross-examination, the victim testified that the Defendant had been drinking quite a lot and that she had seen him smoke "crack" on at least two occasions. She testified that the Defendant became most violent after using cocaine. On the day of the offenses, he had accused her of hiding a man near their tent and he beat her with a branch. She stated that she shouted for help but that no one could hear her so far back in the woods. She recalled that the Defendant was "really drunk" and "was staggering around" on the day of the offenses. She claimed that she tried, but was unable, to fight off the Defendant. The victim testified that she is now married and living in Massachusetts but continues to suffer from vision problems and nightmares because of the incident.

Officer Carl Lewis of the Chattanooga Police Department testified that he was called to a report of a rape at approximately 5:00 a.m. on July 4, 2004. He described arriving at the call to find the victim "pretty roughed up." He stated that "[y]ou could tell she had been either on the ground or beat up pretty bad. Her face was bleeding from the nose, I think from the mouth as well. . . . she was pretty mussed." The victim told Officer Lewis that the Defendant had gotten mad at her earlier in the evening and when she returned to the camp to get her belongings, he beat and raped her. The victim's account of the rape to Officer Lewis was consistent with her testimony at trial except that she also told Officer Lewis that the Defendant had digitally penetrated her anally. Officer Lewis testified that the victim's injuries were consistent with her account of the beating. He specifically recalled that the victim had "stripes on her skin" that could have been from being beaten with a stick. Officer Lewis and Detective Rebecca Shelton returned to the camp that morning where they found

the blood-stained mattress and a stick comparable to the size the victim described. Officer Lewis discovered no eye witnesses, other than the victim, through his investigation of the case.

Cathy Davis, a registered nurse with Memorial Hospital Northshore Clinic and specially trained forensic sexual assault nurse, testified that she performed the examination of the victim. When she arrived at the hospital to perform the examination, the victim was on oxygen and wearing a neck brace. The victim's account of her attack to Ms. Davis was consistent with her testimony at trial, except her report that digital anal penetration had occurred. Ms. Davis stated that the victim suffered significant bruising on her face and painful abrasions on most of her right side, including her torso and leg. Ms. Davis recalled that the vaginal examination was very painful for the victim because there was a lot of bruising along her pubic area. Ms. Davis stated that the victim suffered bruising around the posterior fourchette, or the area between her vagina and rectum. Ms. Davis testified that such bruising is consistent with "forced entry." Photographs documenting the extensive bruising to the victim's face, torso, and legs were admitted at trial. On cross-examination, Ms. Davis testified that there was no evidence of ejaculation found from the examination; she stated that was consistent with the victim's account of the incident.

Chattanooga Police Department Sergeant Darrell Whitfield testified that he assisted in securing the scene at the campsite. He described the location of the tent as far from the main roadway and isolated from other campsites. He recalled no other possible witnesses in the area. He also stated that the Defendant was not at the campsite when they arrived to secure the scene.

Following testimony that sufficiently established the chain of custody of the evidence in this case, Special Agent Margaret Bash with the Tennessee Bureau of Investigation testified that she analyzed the rape kit from the victim's examination. It revealed the presence of both the victim's and the Defendant's DNA.[2] The Defendant's DNA was found from sperm recovered from the vaginal swabs. Special Agent Bash testified that sperm may live up to five days in a woman's vagina.

Chattanooga Police Department Sergeant Rebecca Shelton testified that she was a detective with the domestic violence unit in July 2004 and that, in that capacity, she interviewed the victim. Sergeant Shelton observed the victim at the hospital and recalled that the victim wore a neck brace and had bruises all over her face and body. The victim's account of her attack to Sergeant Shelton was consistent with other witnesses' testimony, including the report of anal penetration.

Based upon this proof, the jury convicted the Defendant of aggravated sexual battery as a lesser included offense of aggravated rape in count one; rape as a lesser included offense of aggravated rape in count two; rape as a lesser included offense of aggravated rape in count three; misdemeanor assault by offensive contact as a lesser included offense of aggravated rape in count four; and aggravated domestic assault, as indicted, in count five. The trial court imposed concurrent sentences of life without parole based upon its finding that the defendant was a multiple violent

---

[2] Upon his arrest in April 2005, the Defendant submitted a blood sample which was a match to the DNA evidence recovered from the victim.

-3-

offender under Tennessee Code Annotated section 40-35-120(a)(5)-(6). By agreement of the parties, the Defendant received concurrent sentences of eight years, six months, and three years for the aggravated sexual battery, misdemeanor assault, and aggravated domestic assault convictions.

ANALYSIS

Initially, the State asserts that this appeal should be dismissed for lack of jurisdiction because the record does not contain an order denying the Defendant's motion for new trial. This court is required to determine whether it has jurisdiction in each case presented for review. Tenn. R. App. P. 13(b). The time for filing an appeal runs from the entry of an order denying a motion for new trial in the trial court. Tenn. R. App. P. 4(c). The trial court retains jurisdiction over a case pending the court's ruling on any timely filed motion for new trial. Tenn. R. App. P. 4(e). The State argues that an unsigned minute entry indicating the denial of a motion for new trial is insufficient to confer jurisdiction to this court. However, we note that since the filing of the State's brief in this case, our supreme court ruled that a minute entry is sufficient to confer jurisdiction upon the appellate court. State v. Byington, 284 S.W.3d 220, 225 (Tenn. 2009). Furthermore, the minute entry in this case contains an electronic signature of the trial judge, and the transcript of the motion for new trial clearly indicates that the trial court denied the motion for new trial. Byington, 284 S.W.3d at 226 (citing to Hull v. Vaughn, 171 Tenn. 642, 107 S.W.2d 219, 222 (1937)) (we presume that minutes were signed as required even when particular page included in the record does not bear an actual signature of the trial judge because "every officer is presumed to have performed his duty"). Therefore, we conclude that this court has jurisdiction to address the Defendant's appeal.

*Sufficiency of the Evidence*

The defendant argues that the evidence is insufficient to support his convictions because "he was too intoxicated and too old to do what he was accused of" by the victim. He also argues that the victim testified that she was "foggy" on some of the events. The State argues that the jury accredited the testimony of the victim even in light of her admission that some of the events seemed foggy after some time had passed. The State also notes that the Defendant cites to no evidence that either his age or his intoxication would have prevented him from committing the offenses. Following our review, we agree that there is sufficient evidence to support the convictions in this case.

An appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). The appellate court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). A guilty verdict removes the presumption of innocence and replaces it with a

presumption of guilt, and on appeal the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict. Id.; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

The offense of rape is defined, relevant to this case, as "the unlawful sexual penetration of a victim by the defendant . . . accomplished without the consent of the victim and the defendant knows or has reason to know that at the time of the penetration that the victim did not consent." Tenn. Code Ann. § 39-13-503(a)(2). Aggravated sexual battery is defined, in relevant part, as "unlawful sexual contact with a victim by the defendant or the defendant by the victim [and] [t]he defendant causes serious bodily injury to the victim." Tenn. Code Ann.§ 39-13-504(a)(2). Assault is defined, in relevant part, as "intentionally or knowingly caus[ing] physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative." Tenn. Code Ann § 39-13-101(a)(3).

The victim testified very specifically regarding each separate sexual offense committed by the Defendant. Her statements to investigators and medical personnel mirrored her testimony at trial. She candidly admitted that the Defendant was very drunk when he committed the offenses. Indeed, she was able to escape to seek help after the Defendant passed out either during or immediately following the final sexual assault. Her extensive injuries corroborated her account of the offenses. Ms. Davis testified that the victim's injuries were consistent with a forced sexual attack. As noted by the State, the Defendant did not present any evidence regarding his alleged inability to commit the acts relative to his level of intoxication or age. The jury accredited the testimony of the victim. Accordingly, we conclude that the evidence is sufficient to support the convictions.

*Sentencing*

Next the Defendant argues that the trial court erred in sentencing him as a repeat violent offender, specifically a multiple rapist, for each rape conviction because the State failed to file a certified copy of the Defendant's prior conviction. The Defendant also asserts that the trial court erred in sentencing the Defendant beyond the presumptive minimum for the remaining felonies. The State argues that the Defendant has waived any issue regarding sentencing by failing to contest the trial court's finding of multiple rapist at the time of sentencing.

The record reveals that the trial court held a very brief sentencing hearing which addressed only sentencing for the rape convictions. The State presented a copy of the Defendant's 1978 conviction for rape. Attached to this record is a notarized letter from the Director of the Central Records Office of the Alabama Department of Corrections certifying the authenticity and veracity of the record. The State correctly asserts that the Defendant did not object to the trial court's finding that the Defendant was a multiple rapist; however, the record before this court also refutes the error alleged by the Defendant on appeal. See Tenn. Code Ann. § 4-35-120(a)(5) and(6) (Defendant has previous conviction for rape, qualifying him for repeat violent offender sentencing). Therefore, we conclude that this issue is without merit.

Relative to the enhancement beyond the statutory minimum of the remaining sentences, the sentencing hearing transcript is silent regarding the trial court's imposition of sentence on the remaining counts. However, the technical record reveals that the parties entered into an agreed order as to sentencing on the remaining counts. In addition to agreeing to the length of the sentences, the parties agreed that the sentences should be served concurrently with the sentences of life without parole on the rape counts. Under these circumstances, we conclude that the Defendant is not entitled to relief on this issue.

## CONCLUSION

Having concluded that the evidence is sufficient to support the Defendant's convictions and that the remaining issues are without merit, the judgments of the trial court are affirmed.

_____
D. KELLY THOMAS, JR., JUDGE